785 N.W.2d 369 (2010)
2010 WI 55
In re the Termination of Parental Rights to ELIJAH W.L., Emily M.L. and Irie A.L., Persons Under the Age of 18:
Sheboygan County Department of Health & Human Services, Petitioner-Respondent-Petitioner,
v.
Tanya M.B., Respondent-Appellant.
In re the Termination of Parental Rights to Elijah W.L., Emily M.L. and Irie A.L., Persons Under the Age of 18:
Sheboygan County Department of Health & Human Services, Petitioner-Respondent-Petitioner,
v.
William S.L., Respondent-Appellant.
Nos. 2008AP3065, 2008AP3066, 2008AP3067, 2009AP136, 2009AP137, 2009AP138.
Supreme Court of Wisconsin.
Argued December 8, 2009.
Decided June 29, 2010.
*371 For the petitioner-respondent-petitioner the cause was argued by Mary T. Wagner, assistant district attorney, with whom on the briefs was Joseph DeCecco, district attorney.
For the respondent-appellant, Tanya M.B., there was a brief and oral argument by Paul G. Bonneson, and the Law Offices of Paul G. Bonneson, Wauwatosa.
For the respondent-appellant, William L., there was a brief and oral argument by Thomas K. Voss, and Thomas K. Voss, Attorney at Law, S.C., Waukesha.
PATIENCE DRAKE ROGGENSACK, J.
¶ 1 We review a decision of the court of appeals[1] reversing the circuit court's decision[2] denying Tanya M.B. (Tanya) and William S.L.'s (William) (collectively, parents) *372 post-verdict motion to dismiss the termination of parental rights petitions. There are two issues presented for our review: (1) Whether the dispositional orders contained "specific services" that are "to be provided to the child and family" as required by Wis. Stat. § 48.355(2)(b)1. (2003-04) or by § 48.355(2)(b)1. (2007-08);[3] and (2) whether the Department met its burden at trial of proving that the Department "ma[d]e a reasonable effort to provide the services ordered by the court." We decline to decide whether the 2003-04 or the 2007-08 version of § 48.355(2)(b)1. governs this case because we conclude that under either version of the statute, the dispositional orders are sufficient. The specific services are found in the orders' directions to the Sheboygan County Department of Health and Human Services (Department) to provide supervision, services and case management to the children and family coupled with the orders' detailed conditions that Tanya and William must meet for the children's return to them. Those detailed conditions implicitly required the Department to provide services necessary to assist the parents in meeting the court ordered conditions for the return of their children. We further conclude that the Department proved by clear and convincing evidence that it "ma[d]e a reasonable effort to provide the services ordered by the court."

I. BACKGROUND
¶ 2 On February 5, 2004, Tanya overdosed on heroin while her three children, Elijah W.L. (Elijah), Emily M.B. (Emily) and Irie A.L. (Irie) (collectively, the children), were in the car with her. The police were contacted and Tanya was revived. William was not present; he was incarcerated at that time.
¶ 3 As a result of Tanya's overdose and William's incarceration, the Department filed a petition alleging Elijah, Emily and Irie were children in need of protection or services (CHIPS). On March 25, 2004, a disposition hearing was held and the circuit court found all three children in need of protection or services on the grounds of parental neglect pursuant to Wis. Stat. § 48.13(10). The court entered a one-year dispositional order[4] for each of the three children placing them under the supervision of the Department. Under the original dispositional orders, the children remained in the home with Tanya and William, who lived with Tanya's mother, Connie. The dispositional orders were amended on December 17, 2004, to place the children out of the home, but with Connie, because both William and Tanya were incarcerated.
¶ 4 The dispositional orders set forth the detailed conditions to be met by Tanya and William for return of their children. The conditions were separated into three categories and the specific conditions pertaining to each category were listed under the heading "Explanation of Provision."
¶ 5 The first category of the conditions of return is "Alcohol and other drug." Such conditions were as follows:
Tanya B[.] and William L[.] will complete any recommended alcohol or drug abuse programs[,] ... attend an A[lcohol and] O[ther] D[rug] A[ssessment]... if it is scheduled and they will meet with the [social] worker to talk about the *373 report when the evaluation is finished. Tanya and William will not use any illegal drugs and they will stay away from people who use drugs. Tanya and William will not use any drugs or allow others to use drugs in their home or [where] their children are present. Tanya and William will cooperate with the treatment program and they will stay in any programs until they are discharged. Tanya and William will provide a urine, breath, blood, saliva, or hair follicle sample for drug or alcohol test if they are asked to do so by their [social] worker. Tanya and William will understand that if they do not give a sample when asked to, their [social] worker and the Court will assume that they have used illegal drugs.
The second category is "Counseling." The conditions of return in this category were as follows:
Tanya B[.] and William L[.] will complete a Psychological and/or a Psychosocial Evaluation if recommended by the social worker. Tanya and William will go to any treatment and/or counseling programs that may be recommended.
Tanya B[.] and William L[.] will complete any programs recommended by their [social] worker. Tanya and William will attend individual or family counseling and they will stay in the program until they have completed the program.
The third category is "Other." The conditions of return in this category were as follows:
Tanya B[.] and William L[.] will stay in touch and cooperate with their [social] worker[,] ... will meet with the [social] worker when asked, allow the [social] worker into the home, with or without notice, and inform the [social] worker of any address or telephone number changes[,] ... will sign all necessary Releases of Information and cooperate with their [social] worker to arrange any treatment programs that are required[, and] will be available to their [social] worker to make any necessary appointments and they will give their worker copies of any papers, which will show that they have completed or participated in programs.
Tanya B[.] and William L[.] will provide their children with a safe, suitable, and stable home.
Tanya B[.] will resolve all criminal charges and cooperate with her probation or parole officer.
Tanya B[.] and William L[.] will show that they can care for and control their children and that they understand their children's needs. Tanya and William will go to any parenting or nurturing program set up by the [social] worker and attend any community-based programs recommended by their [social] worker. Tanya and William will stay in any programs until they have completed them. Tanya and William will have appropriate child care for their children in their absence. Tanya and William will demonstrate the ability to use the skills in the programs that have been provided to them.
¶ 6 The dispositional orders were amended on November 29, 2004, to include two additional conditions of return as a result of both parents being incarcerated. The new conditions were as follows:
1. William L[.] and Tanya B[.] shall independently establish and maintain an appropriate residence for themselves and their children upon release from prison and maintain that residence for a minimum of six months prior to the return of the children.
2. William L[.] and Tanya B[.] shall obtain and maintain full-time employment upon release from prison for a *374 minimum of six months prior to the return of the children.
¶ 7 Item six of the forms used for the dispositional orders was labeled: "Services to be provided to child and family." Next to that statement, there was an empty box that a court could check to indicate a report was attached. The court did not check this box and there was no attached report listing the services to be provided to the children and family.
¶ 8 Item seven in the dispositional orders directed the Department to provide "supervision," "services" and "case management."[5]
¶ 9 The children remained under the court's protection and the Department's supervision for the next three years. Then, on March 7, 2008, nearly four years after the court entered the original dispositional orders, the Department filed petitions to terminate the parental rights of Tanya and William with respect to Elijah, Emily and Irie.
¶ 10 The court held a five-day jury trial in which all six termination petitions were tried together. At trial, the Department presented lengthy testimony in support of its petitions for termination, demonstrating Tanya and William's failure to comply with the court ordered conditions of return. Trial testimony included extensive testimony on the many services the Department provided to William, Tanya and the children. The relevant portions of such testimony are detailed in section II.C. infra.
¶ 11 At the conclusion of the evidentiary portion of the trial, the case was submitted to the jury in the form of a special verdict. The special verdict posed four questions. The only question relevant to this appeal is Question 2, which asked: Did the Department "make a reasonable effort to provide the services ordered by the court?"
¶ 12 During its deliberations, the jury submitted a question to the court. At the top of the page, the jury wrote "Ex: # 3 p3." Trial Exhibit # 3 was the dispositional order for one of the three children. Specifically, page three of the order was the page on which the detailed conditions of return were listed. The jury's question was written below this notation. The question asked: "Are the explanation of provisions listed as the services that were ordered by the court in Question 2 of verdict?" On the record, the court discussed its proposed response to the jury's question. It stated:
[Court]: The Court proposes to answer the jury's inquiry by stating, "The court-ordered services contained in the dispositional orders and revised dispositional orders were the conditions the parents were required to meet for return of the children." Any objection to that response?
[Deputy District Attorney James Van Akkeren, co-counsel for the Department]: No, your Honor.
...
[Attorney Phillip Hoff, counsel for William S.L.]: No objection.
[Jay Zierhut, guardian ad litem, counsel for Elijah, Emily and Irie]: No objection.
[Attorney Marcus Falk, counsel for Tanya M.B.]: No objection.
¶ 13 The court submitted the proposed response to the jury. Approximately 30 minutes later, the jury submitted two additional questions to the court. The questions *375 and the court's responses were as follows:
[Jury]: What exactly were the services ordered by the court?
[Court]: Answer: The obligation of the Dept. was to provide supervision of the case which implicitly included assisting the parents to meet the conditions of return of the children.
[Jury]: Are the services ordered by the court contained in the conditions of return?
[Court]: Answer: No.
¶ 14 Before the court answered the last two questions posed by the jury, Tanya moved to dismiss the petitions based on the allegation that the dispositional orders did not set forth "specific services" as required by Wis. Stat. § 48.355(2)(b)1. The circuit court noted that it would take the motion under advisement and that the objection was preserved.
¶ 15 The jury answered the second special verdict question in the affirmative, finding that the Department made a reasonable effort to provide the services ordered by the court. The court granted judgment on the verdicts and, pursuant to Wis. Stat. § 48.424(4),[6] found the parents to be unfit. Tanya renewed her earlier motion to dismiss the termination of parental rights petitions, which William joined. The circuit court denied the motion. The court then held a dispositional hearing wherein it concluded that it was in the best interests of the children to terminate the parental rights of Tanya and William.
¶ 16 On appeal, the court of appeals concluded that the circuit court erred in denying the parents' motion to dismiss the termination of parental rights petitions because the dispositional orders underlying the petitions "failed to set forth any court-ordered services as required by [Wis. Stat.] § 48.355(2)(b)1." Sheboygan County Dep't of Health & Human Servs. v. Tanya M.B., Nos. 2008AP3065, 2008AP3066, 2008AP3067, 2009AP136, 2009AP137 and 2009AP138, 2009 WL 1139338, unpublished slip op., ¶ 1 (Wis.Ct.App. Apr. 29, 2009).
¶ 17 We granted review and now reverse.

II. DISCUSSION

A. Standard of Review
¶ 18 Our review draws into question the potential interpretation and application of Wis. Stat. § 48.355(2)(b)1. (2003-04) and § 48.355(2)(b)1. (2007-08). "The interpretation and application of a statute to an undisputed set of facts are questions of law that we review independently." Estate of Genrich v. OHIC Ins. Co., 2009 WI 67, ¶ 10, 318 Wis.2d 553, 769 N.W.2d 481 (quoting McNeil v. Hansen, 2007 WI 56, ¶ 7, 300 Wis.2d 358, 731 N.W.2d 273). We also review as a question of law whether the evidence presented to a jury is sufficient to sustain its verdict. State v. Booker, 2006 WI 79, ¶ 12, 292 Wis.2d 43, 717 N.W.2d 676. However, we benefit from the discussion provided in previous court reviews. Spiegelberg v. State, 2006 WI 75, ¶ 8, 291 Wis.2d 601, 717 N.W.2d 641.

B. Sufficiency of the Dispositional Orders
¶ 19 The parties dispute whether the dispositional orders contained "specific services" as that term is used in Wis. Stat. § 48.355(2)(b)1. Accordingly, our inquiry is driven by our interpretation of § 48.355(2)(b)1.

*376 1. Parties' positions
¶ 20 Because the parties offer competing interpretations of Wis. Stat. § 48.355(2)(b)1., it is instructive to examine each party's argument.

a. Department's position
¶ 21 After the parties submitted their briefs to this court, the Department filed a "Supplemental Authority Letter," which raised a new argument. The Department pointed out that Wis. Stat. § 48.355(2)(b)1. was amended in 2007 by 2007 Wisconsin Act 20, § 1248. Accordingly, § 48.355(2)(b)1. (2003-04),[7] which was in existence at the time the dispositional orders were entered, and § 48.355(2)(b)1. (2007-08),[8] which was the version in effect at the time of trial, contain different language.
¶ 22 First, the Department contends that the 2003-04 statute has a less exacting standard that should apply here because the 2003-04 statute was in effect when the court entered the dispositional orders and for the majority of the CHIPS proceedings. The Department argues that the dispositional orders were sufficient under Wis. Stat. § 48.355(2)(b)1. (2003-04) because the term "if any" limited a judge's obligation to order services.
¶ 23 Second, the Department contends that even if the court interprets and applies Wis. Stat. § 48.355(2)(b)1. (2007-08), the dispositional orders were sufficient under that version of the statute. It argues that the directive in the dispositional orders that the Department provide supervision, services and case management coupled with the services implicitly needed to assist the parents in meeting the conditions for the return of their children enumerate the "specific services" to be provided to Tanya, William and their children.[9]
¶ 24 Third, the Department argues that the parents forfeited their right to object to the sufficiency of the dispositional orders due to their failure to object in the nearly four years since the orders were entered.

b. Parents' position
¶ 25 The parents assert that the differing language between the 2003-04 version and the 2007-08 version of Wis. Stat. § 48.355(2)(b)1. is inconsequential. This is so, they assert, because the court order "shall contain" "specific services" under *377 both versions, a standard that the parents contend was not satisfied here.
¶ 26 The parents argue that the dispositional orders were insufficient under Wis. Stat. § 48.355(2)(b)1.[10] because they did not separately list the "specific services" to be provided by the Department. The parents assert that in order to be sufficient, the box next to item six on the form used for the dispositional orders, indicating "[s]ervices to be provided to child and family," must have been checked and a separate report that listed the specific services to be provided must have been attached. This was not done here. On this basis, the parents argue that the petitions to terminate their parental rights must be dismissed.

2. General principles
¶ 27 Because "[w]e assume that the legislature's intent is expressed in the statutory language," statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶¶ 44-45, 271 Wis.2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, and therefore unambiguous, our inquiry goes no further and we apply the statute according to our ascertainment of its plain meaning. Id., ¶ 45.
¶ 28 In ascertaining the plain meaning of a statute, we give the statutory language "its common, ordinary, and accepted meaning." Id. The scope, context and purpose of a statute assist us in a plain-meaning interpretation. Id., ¶ 48. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes...." Id., ¶ 46. We interpret statutes to promote, rather than contravene, their stated purpose. See id., ¶ 49; McNeil, 300 Wis.2d 358, ¶ 16, 731 N.W.2d 273 ("[T]he purpose of a statute informs our interpretation of it."). A statute may "contain [an] explicit statement[] of legislative purpose" or its purpose may be "readily apparent from its plain language." Kalal, 271 Wis.2d 633, ¶ 49, 681 N.W.2d 110.

3. Wisconsin Stat. § 48.355(2)(b)1.
¶ 29 We assume without deciding that the parents did not forfeit their objection *378 to the sufficiency of the dispositional orders. Therefore, we turn to the merits of the parties' arguments.
¶ 30 We first address the issue regarding which version of Wis. Stat. § 48.355(2)(b)1. controls in this case, either the 2003-04 version, which was in effect when the dispositional orders were entered, or the 2007-08 version, which was in effect at the time of trial.
¶ 31 Both versions of Wis. Stat. § 48.355(2)(b) state that the court order "shall contain" followed by a list of 13 directives to the circuit court. Our focus is on subd. (2)(b)1., which states that the order shall contain "[t]he specific services" that are "to be provided to the child and family." § 48.355(2)(b)1. (2003-04); § 48.355(2)(b)1. (2007-08) (fully set out in footnotes 7 and 8, supra). However, the 2003-04 statute contained the additional language that the order shall contain the specific services "or continuum of services" "if any," which terms are not present in the current statute. Compare § 48.355(2)(b)1. (2003-04) with § 48.355(2)(b)1. (2007-08). The Department argues that the "continuum of services" language in the 2003-04 statute is a less exacting standard than "specific services." It further argues that the "if any" language in the 2003-04 statute should be interpreted to mean that the order must list specific services only "if any" are so ordered.
¶ 32 The 2007-08 version of the statute eliminates the language that the Department posits is less exacting. Therefore, any order that is sufficient under the 2007-08 statute is necessarily sufficient under the 2003-04 statute as well. Because we conclude that the orders are sufficient under the 2007-08 statute, and therefore under the 2003-04 statute as well, it is not necessary for us to determine which version of the statute controls here. The dispositional orders are sufficient under either version.
¶ 33 As stated, we conclude that the dispositional orders contained "specific services," as required by Wis. Stat. § 48.355(2)(b)1.[11] We so conclude because § 48.355(2)(b)1. does not require a CHIPS dispositional order to separately list each individual service that the Department is to provide so long as the Department is ordered to provide "supervision," "services" and "case management" and the order also provides detailed conditions that the parents must complete in compliance with the dispositional order.
¶ 34 The detailed conditions directed at changing the parents' conduct establish the specific services that the Department is to provide, either directly or through arrangements with others. For example, one condition states: "Tanya and William *379 will go to any parenting or nurturing program set up by the [social] worker and attend any community-based programs recommended by their [social] worker." Implicit in this condition is an order that the Department arrange for a parenting or nurturing program for the parents to attend, i.e., a specific service. The Department did arrange for a parenting program, but Tanya and William did not complete it.
¶ 35 The dispositional orders also directed the Department to assist the parents in completing certain programs, which the Department may recommend in order to enable them to be reunited with their children. These included "alcohol or drug abuse programs," "an [Alcohol or Other Drug] assessment," "Psychological and/or a Psychosocial Evaluation," "treatment and/or counseling programs" and "individual or family counseling."
¶ 36 The detailed conditions of return set out specific case management services the Department was to provide. The conditions required Tanya and William to "stay in touch and cooperate with their [social] worker," "meet with the [social] worker when asked," "allow the [social] worker into the home" and to "be available to their [social] worker to make any necessary appointments." Implicit in such conditions is the requirement that the Department provide services to the parents by providing a social worker who will be available to William and Tanya; who will set up appointments with them; and regularly "stay in touch."
¶ 37 The dispositional orders set out specific services that the Department was to provide to or arrange for the entire family, including the three children. These services were to assist William and Tanya in: "provid[ing] their children with a safe, suitable, and stable home"; learning to "care for and control their children"; "understand[ing] their children's needs"; and obtaining "appropriate child care for their children in their absence."
¶ 38 The two conditions of return that were added in November 2004 required the Department to assist William and Tanya, upon release from prison, in obtaining and maintaining an appropriate residence for themselves and their children and in obtaining and maintaining full-time employment.
¶ 39 Furthermore, the responses of counsel for Tanya, William and the Department to the circuit court's answer to the first jury question demonstrates that for almost four years all parties had been interpreting the dispositional orders as requiring the Department to arrange the services necessary to assist Tanya and William in meeting the court ordered conditions for the return of their children. This further supports our interpretation of Wis. Stat. § 48.355(2)(b)1. in light of the facts of this case.
¶ 40 Finally, our interpretation of Wis. Stat. § 48.355(2)(b)1. is consistent with the purpose of § 48.355(2)(b)1., which is "readily apparent from its plain language," coupled with the "explicit ... legislative purpose" of the Children's Code. Kalal, 271 Wis.2d 633, ¶ 49, 681 N.W.2d 110. The apparent purpose of § 48.355(2)(b)1. is to assure that the Department will arrange those services that are necessary to assist the parents in meeting the court ordered conditions for the return of their children. However, how best to assist parents in meeting those conditions may change as the parents make progress or encounter difficulty in changing their behavior. For example, when Tanya and William were incarcerated, it would have made little sense for the circuit court to require the Department to visit in their homes on a weekly basis or to assist them in finding current employment. However, the Department could, and did, facilitate parenting *380 classes and alcohol and drug treatment at the locations where Tanya and William were confined. In that way, the Department continued to provide services to the parents, as the court had ordered, albeit with the flexibility that Tanya and William's current circumstances required.
¶ 41 Our conclusion that the CHIPS dispositional orders are statutorily sufficient is consistent with the explicit legislative purpose of the Children's Code. Wisconsin Stat. § 48.01 states in relevant part:
(1) ... In construing this chapter, the best interests of the child or unborn child shall always be of paramount consideration. This chapter shall be liberally construed to effectuate the following express legislative purposes:
(a) ... The courts and agencies responsible for child welfare should also recognize that instability and impermanence in family relationships are contrary to the welfare of children and should therefore recognize the importance of eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return to the family.
...
(gr) To allow for the termination of parental rights at the earliest possible time after rehabilitation and reunification efforts are discontinued ... is in the best interest of the child.
(Emphasis added.)
¶ 42 The Children's Code focuses on the best interests of the child. Wis. Stat. § 48.01(1). The legislature has stated that the best interests of the child are furthered by a permanent and stable home for the child. § 48.01(1)(a). Tanya and William could establish a permanent and stable home for their children only if they could change their conduct in ways that would permit them to meet the court ordered conditions for the return of the children. Affording the Department flexibility in the manner in which it provides services to the parents, permits the Department to accommodate the parents' changing needs. This, in turn, affords the parents the best opportunity for reunification of their family. Accordingly, both the apparent purpose underlying Wis. Stat. § 48.355(2)(b)1. and the explicit purpose of the Children's Code support our conclusion that the CHIPS dispositional orders were in compliance with § 48.355(2)(b)1.
¶ 43 Tanya and William also contend that F.T. v. State, 150 Wis.2d 216, 441 N.W.2d 322 (Ct.App.1989), requires dismissal of the petitions to terminate their parental rights. The court of appeals relied on F.T. in its decision. Sheboygan County, No. 2008AP3065, 2009 WL 1139338, unpublished slip op., ¶ 9 & n. 6.
¶ 44 Tanya and Williams' reliance on F.T. is misplaced. In F.T., the court of appeals addressed whether the circuit court properly imposed sanctions for violation of the conditions of an order in a delinquency proceeding "where the order did not contain `[a] statement of the conditions with which the child [was] required to comply' ... and where the court failed to `explain[] the conditions to the child' at the dispositional hearing." F.T., 150 Wis.2d at 218, 441 N.W.2d 322 (quoting Wis. Stat. § 48.355(2)(b)7. and (6)(a) (1987-88)). The sanctions that the circuit court had ordered were reversed by the court of appeals because the circuit court had not provided "a full explanation of what is necessary for compliance, and what conduct must be eschewed in order to avoid the sanctions which may be imposed for violation" when the legislature said the court "shall" so provide. Id. at 227, 441 N.W.2d 322.
*381 ¶ 45 F.T. involved the interpretation of Wis. Stat. § 48.355(2)(b)7. and (6)(a) (1987-88). Id. at 218, 441 N.W.2d 322. Those statutes served a very different purpose in regard to the interests of a juvenile in a delinquency proceeding, as compared with the purpose § 48.355(2)(b)1. serves in a CHIPS order. The apparent purpose of § 48.355(2)(b)7. and (6)(a) is to give notice to the juvenile of the conduct that the circuit court requires and the conduct the juvenile must avoid.
¶ 46 The reversal of the circuit court decision in F.T. came about because the lack of notice in the order contravened the purpose of Wis. Stat. § 48.355(2)(b)7. and (6)(a) (1987-88). Stated otherwise, the decision in F.T. was driven by the failure of the circuit court to give notice to a juvenile in a delinquency proceeding, which failure of notice affected the juvenile's right to know of the conditions he must meet and the conduct he must eschew to avoid court sanctions. See id. at 227-28, 441 N.W.2d 322.
¶ 47 In contrast, the apparent purpose of Wis. Stat. § 48.355(2)(b)1. is to assure that the Department will provide those services necessary to assist parents in meeting the court ordered conditions for the return of their children. Tanya and William do not claim that the CHIPS dispositional orders were insufficient to cause the Department to provide the necessary services, nor is there any proof that the Department was not diligent in doing so. See section II.C. infra. Accordingly, F.T. does not support William and Tanya's claim that the termination of their parental rights should be reversed.
¶ 48 Furthermore, to accept the parents' argument and conclude that the dispositional orders are insufficient because the court failed to check a box on a form that the court used for the dispositional orders and to separately list how the Department was to provide each individual service necessary for the return of the children to the parents, would be to elevate form over substance. See State v. Saunders, 2002 WI 107, ¶ 41, 255 Wis.2d 589, 649 N.W.2d 263 ("The process we require should not elevate form over substance."). This is so because William and Tanya do not contend that the Department failed to provide them the services that were necessary for them to meet the detailed conditions for return of their children and because the conditions under which the Department attempted to assist William and Tanya changed over the four years of supervision. Accordingly, we will not elevate form over substance in our interpretation of Wis. Stat. § 48.355(2)(b)1., and we conclude that the CHIPS dispositional orders are sufficient to satisfy the statutory requirement.

C. Department's Burden of Proof
¶ 49 A jury's verdict must be sustained if there is any credible evidence, when viewed in a light most favorable to the verdict, to support it. State v. DeLain, 2005 WI 52, ¶ 11, 280 Wis.2d 51, 695 N.W.2d 484. Although we apply the standard set out in DeLain, we are mindful that terminations of parental rights "are among the most severe forms of state action," involving as they do "`the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" Evelyn C.R. v. Tykila S., 2001 WI 110, ¶ 20, 246 Wis.2d 1, 629 N.W.2d 768 (quoting M.L.B. v. S.L.J., 519 U.S. 102, 128, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996)). At stake for the parents is the permanent severance of "all rights, powers, privileges, immunities, duties and obligations existing between parent and child." Wis. Stat. § 48.40(2).
¶ 50 "Due to the severe nature of terminations of parental rights, termination proceedings require heightened legal safeguards against erroneous decisions." *382 Evelyn C.R., 246 Wis.2d 1, ¶ 21, 629 N.W.2d 768. "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process[12] requires that the State support its allegations by ... clear and convincing evidence." Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); accord Oneida County Dep't of Soc. Servs. v. Nicole W., 2007 WI 30, ¶ 10, 299 Wis.2d 637, 728 N.W.2d 652 ("When a fundamental liberty interest is at issue, the due process clause of the Fourteenth Amendment requires that proof of parental unfitness be shown by clear and convincing evidence.").
¶ 51 Wisconsin's Children's Code, Wis. Stat. ch. 48, reflects this constitutional concern. Oneida County, 299 Wis.2d 637, ¶ 11, 728 N.W.2d 652. When parents contest termination of their parental rights, the termination proceeding involves a two-step procedurea factual finding of grounds for termination and a legal conclusion that termination is in the best interests of the child. Id.; see also Wis. Stat. § 48.422; Evelyn C.R., 246 Wis.2d 1, ¶¶ 22-23, 629 N.W.2d 768.
¶ 52 Wisconsin Stat. § 48.415(2) sets out continuing need of protection and services as grounds for an involuntary termination of parental rights. That is the grounds relied upon here. Pursuant to Wis. Stat. § 48.31(1), "[a]t the fact-finding hearing, the petitioner must prove the allegations supporting grounds for termination by clear and convincing evidence." Oneida County, 299 Wis.2d 637, ¶ 12, 728 N.W.2d 652 (internal quotations and brackets omitted). "While the legislative objective of the Children's Code is to promote the best interests of the child,[13] the parent's rights are a court's central focus during the grounds phase...." Id. If the petitioner meets this evidentiary burden, the court "shall find the parent unfit" and advance to the second step of the termination procedure. Wis. Stat. § 48.424(4).
¶ 53 During the second step of the termination procedure, the dispositional phase, "the court determines whether the best interests of the child are served by the termination of the parent's rights." Oneida County, 299 Wis.2d 637, ¶ 13, 728 N.W.2d 652 (citing Evelyn C.R., 246 Wis.2d 1, ¶ 23, 629 N.W.2d 768; Steven V. v. Kelley H., 2004 WI 47, ¶ 27, 271 Wis.2d 1, 678 N.W.2d 856); Wis. Stat. § 48.426(2). If after the dispositional phase the court finds that the evidence warrants the termination of parental rights, "[t]he court may enter an order terminating the parental rights of one or both parents." Wis. Stat. § 48.427(3).
¶ 54 In this case, the parents allege that the circuit court erred during the fact-finding phase in affirming the jury's verdicts and finding the parents unfit. They assert this was error because the Department failed to meet its burden of demonstrating by clear and convincing evidence that the Department "ma[d]e a reasonable effort to provide the services ordered by the court" because there were no "services ordered by the court" in the dispositional orders. We disagree.
¶ 55 Wisconsin Stat. § 48.415(2) sets forth the requisite showing for a termination of parental rights on the grounds that a child is deemed in need of protection *383 or services. The four special verdict questions presented to the jury track the requisite showing of § 48.415(2).
¶ 56 Wisconsin Stat. § 48.415(2)(a)2.b. requires a showing "[t]hat the agency responsible for the care of the child and the family ... has made a reasonable effort to provide the services ordered by the court." Similarly, special verdict Question 2 asked the jury whether the Department "ma[d]e a reasonable effort to provide the services ordered by the court?" Pursuant to § 48.415(2)(a)2.a., the court further instructed the jury that:
"[r]easonable effort" means an earnest and conscientious effort to take good faith steps to provide those services, taking into consideration the characteristics of the parent or child, the level of cooperation of the parent, and other relevant circumstances of the case. You may find the agency's effort was reasonable even though there were minor or insignificant deviations from the court's order.
¶ 57 The parents base their argument that the Department failed to meet its burden of proof solely on the assumption that the dispositional orders failed to order any services.[14] However, in this decision, we previously concluded that the dispositional orders did in fact contain court ordered services. See supra Part II.B.
¶ 58 We continue our discussion to demonstrate that the record is replete with credible evidence presented at trial that supports the jury's finding that the Department "ma[d]e a reasonable effort to provide the services ordered by the court."
¶ 59 The Department was to provide the parents with an alcohol and other drug assessment and treatment. The Department's Division of Outpatient Services performed an alcohol and drug assessment for Tanya. The Department did not directly administer William's assessment; instead, because he was incarcerated, the Department of Corrections performed William's assessment.
¶ 60 In February 2004, Ralph Radey, a certified alcohol and drug counselor employed by the Department's Division of Outpatient Services, agreed to provide Tanya with relapse prevention therapy. She attended eight sessions and then dropped out of treatment. Mr. Radey then arranged a morning group that suited her work schedule. Tanya attended two sessions and again dropped out of treatment. Mr. Radey sent Tanya numerous letters encouraging her to reinvolve herself in treatment. Tanya never responded.
¶ 61 As it did with Tanya, the Department offered William alcohol and drug treatment services through its Division of Outpatient Services. William declined those services.
¶ 62 In March 2006, Tanya contacted Mr. Radey again to enroll in relapse prevention therapy and a problem-solving group. Mr. Radey testified that Tanya *384 attended three or four sessions and then dropped out of treatment.
¶ 63 The Department referred both William and Tanya to Alcoholics Anonymous and Narcotics Anonymous treatment groups, which they both sporadically attended. The Department referred Tanya for outpatient treatment at Libertas of Sheboygan and Aurora Sheboygan Memorial Medical Center. At both treatment centers, Tanya met with a counselor for her initial appointment and then failed to show up for any subsequently scheduled appointments.
¶ 64 Both William and Tanya received extensive alcohol and drug treatment from the Department of Corrections while they were incarcerated.[15] William and Tanya were generally uncooperative with regard to their alcohol and drug treatment. At trial, they both were of the opinion that treatment was a waste of time. William described one of his treatment programs as "a joke," and stated that treatment would not affect his "ultimate choice [of] whether or not [he] will use drugs." Ms. Mittelstaedt testified that "Tanya made it clear to me that treatment does nothing, she only goes because I make her go. She state[d] that ... she is going to use if she wants to use."
¶ 65 The Department was ordered to provide Tanya with a psychosocial evaluation. The Department's Division of Outpatient Services completed the psychosocial evaluation[16] and clinical summary.
¶ 66 The Department was ordered to provide the parents individual or family counseling services. The Department arranged for Tanya and William to see a counselor for couples' counseling sessions. They attended counseling sessions for a couple of months and then stopped attending. Tanya and William did not complete the counseling program. Further, the Department performed a complete family assessment for Tanya, William and their children, which consisted of gathering information to determine treatment goals for the family.
¶ 67 The Department was ordered to assist the parents in learning to care for and control their children and in understanding their children's needs. In its attempt to do so, the Department referred Tanya and William to a parenting program offered by the Children's Service Society and instructed them on how to enroll. Neither Tanya nor William completed the parenting program. The Department provided Elijah with counseling services from a psychologist and psychiatrist for his behavioral issues. The Department encouraged Tanya to participate in Elijah's counseling sessions so she could better understand Elijah's needs. Tanya declined to participate. At countless meetings, Ms. Mittelstaedt discussed with William and Tanya how to better parent their children.
¶ 68 The Department was ordered to assist the parents in providing their children "a safe, suitable, and stable home." In this regard, the Department petitioned the court to change the children's placement *385 to Connie's home when, due to William and Tanya's drug use and extended incarceration, it became clear that they could not provide a safe home for the children. The Department assisted Connie by providing parenting mentors that would come to her house during the week and help with the children; helping her enroll in a parenting class; and helping her obtain daycare and weekend respite care for the children. The Department also helped Connie obtain financial assistance while she cared for the children. Connie received a monthly subsidy from Kinship, a program administered by the Department, which is available for grandparents who have grandchildren placed with them.
¶ 69 In attempts to provide Elijah with a stable home, several times the Department formally changed Elijah's placement. On July 22, 2005, Elijah left Connie's home, and the Department placed him with his maternal aunt, Christie. The Department assisted Christie in obtaining low-income housing for her and Elijah and financial assistance. Because Christie was suffering from self-mutilation, the Department transferred Elijah to a temporary receiving home so the Department could assess where he should be placed next. Then, on March 24, 2006, Elijah returned to Connie's home. Elijah continued to exhibit behavioral problems while at Connie's; therefore, on December 14, 2007, the Department provided Elijah with foster care services.
¶ 70 The Department was ordered to assist the parents in establishing and maintaining an appropriate residence for their children. Several times Ms. Mittelstaedt offered to help Tanya move into the Bridgeway House, a shelter for homeless women and their children, which assists mothers in getting back on their feet and in parenting their children. Tanya was "very negative" about the Bridgeway House and refused to move there. In February 2006, when Tanya was released from prison, the Department helped Tanya obtain affordable housing and helped her furnish her apartment with beds for the children, a kitchen table and a couch. The Department encouraged William to obtain his own apartment, but he maintained a transient lifestyle living temporarily with friends, Tanya and Connie.
¶ 71 The Department was ordered to assist the parents in obtaining appropriate child care in their absence. As stated, the Department petitioned to change the children's placement to Connie's home when William and Tanya were both incarcerated.
¶ 72 The Department was ordered to assist William and Tanya in obtaining and maintaining full-time employment for a minimum of six months. William refused the Department's offer to help him obtain employment from a full-time employment agency. William explained that he preferred the quick money he obtained through the agencies that provided temporary employment. William's temporary jobs never lasted more than four or five months. Additionally, the Department encouraged Tanya to obtain full-time employment, which she often did. However, her frequent incarceration, both of her subsequent pregnancies and drug use prevented her from maintaining full-time employment.
¶ 73 Finally, the Department was ordered to provide the parents a social worker who provided them with case management services. The worker was ordered to keep in touch with the parents, be available to the parents and set up appointments to meet with the parents. The Department assigned Martha Mittelstaedt as William and Tanya's social worker. Ms. Mittelstaedt scheduled monthly home visits with William and Tanya, which she *386 increased to weekly visits in May 2007. She also scheduled additional office visits and meetings upon their request. Over the course of the entire proceeding, Ms. Mittelstaedt scheduled more than 70 meetings with William and/or Tanya, including visits at the prison or jail. Ms. Mittelstaedt had approximately 85 phone conversations with the parents. In addition to her contact with William and Tanya, Ms. Mittelstaedt had more than 400 phone conversations and approximately 130 meetings with other individuals involved in this case. These meetings and conversations were with Connie, Christie, the children and various service providers, including counselors, teachers, relatives, probation and parole officers and doctors.
¶ 74 A relevant consideration in determining "reasonable effort" to provide services is the parents' "level of cooperation." Wis. Stat. § 48.415(2)(a)2.a. William and Tanya frequently rejected services offered by the Department and were especially uncooperative with respect to their drug and alcohol treatment. This is evidenced by the fact that William and Tanya used drugs throughout these proceedings. The following are specific examples of William and Tanya's drug use.
¶ 75 On July 19, 2004, William hit a park bench, driving while intoxicated. William was arrested for operating a vehicle while intoxicated.
¶ 76 On September 10, 2004, Tanya overdosed on heroin. William, Elijah, Emily and Irie were present during her overdose. The police later discovered that William had concealed in his pants the evidence of Tanya's drug use. Tanya and William were both convicted of felony possession of narcotics. Tanya was sentenced to 14 months in prison and 11 months of extended supervision. William, who was on probation for burglary, was sentenced to five years in prison. William was released on parole on July 11, 2006. In April 2006, before William was released, Tanya's probation was revoked after she tested positive for illegal drugs. Tanya remained in jail until August 16, 2006, when she was transferred to Taycheedah Correctional Institute for drug and alcohol treatment.
¶ 77 On March 27, 2006, Tanya tested positive for cocaine. As a result, Tanya was arrested by her probation agent on April 7, 2006, and remained in jail until August 2006. On April 23, 2007, William submitted someone else's urine to his social worker for a drug test. William fled, and a warrant was issued for his arrest.
¶ 78 On May 10, 2007, Tanya again overdosed on heroin while she was with William and her five-month-old son, Shannon.[17] Tanya was placed in jail on a probation hold after this incident and remained there until May 23, 2007. William was also arrested on an outstanding arrest warrant.
¶ 79 On August 25, 2007, William was intoxicated and got into a fight with Tanya's then boyfriend. William was convicted of disorderly conduct and was sentenced to six months in jail. As an alternative to revocation, he spent three months in an alcohol and drug halfway house in Waukesha, Wisconsin.
¶ 80 Tanya's social worker testified that she "disappeared" from the beginning of November 2007 to December 19, 2007, when she was arrested and jailed on a probation hold. At the time of trial, Tanya was still incarcerated.
*387 ¶ 81 Determining reasonable effort also takes into account "other relevant circumstances of the case." Wis. Stat. § 48.415(2)(a)2.a. One such relevant circumstance was William and Tanya's unavailability due to frequent incarceration. Ms. Mittelstaedt confirmed that the Department considered this in stating that "services were contingent upon if [William and Tanya] were incarcerated and if they weren't available for services because of their incarceration." The foregoing incidents of William and Tanya's drug abuse also demonstrate how frequently they were incarcerated.
¶ 82 Based upon the foregoing, we conclude that there is sufficient credible evidence to support the jury's verdict that the Department proved by clear and convincing evidence that it "ma[d]e a reasonable effort to provide the services ordered by the court."

III. CONCLUSION
¶ 83 We decline to decide whether the 2003-04 or the 2007-08 version of Wis. Stat. § 48.355(2)(b)1. governs this case because we conclude that under either version of the statute the dispositional orders are sufficient. The specific services are found in the orders' direction to the Department to provide supervision, services and case management to the children and family coupled with the orders' detailed conditions that Tanya and William must meet for the children's return to them. Those detailed conditions implicitly required the Department to provide services necessary to assist the parents in meeting the court ordered conditions for the return of their children. We further conclude that the Department proved by clear and convincing evidence that it "ma[d]e a reasonable effort to provide the services ordered by the court."
The decision of the court of appeals is reversed.
SHIRLEY S. ABRAHAMSON, Chief Justice. (concurring).
¶ 84 I would affirm the orders of the circuit court denying the parents' motions to dismiss the termination of parental rights petitions.
¶ 85 I do not join the majority opinion because, in my opinion, the majority opinion rewrites Wis. Stat. § 48.355(2)(b), which sets forth mandatory requirements for dispositional orders.[1]
¶ 86 I begin by stating the procedural posture of the case.
¶ 87 The parents contend that the jury verdict must be reversed because the dispositional orders failed to state specifically, in accordance with Wis. Stat. § 48.355(2)(b)1., the services the Department would provide them. The parents argue that the Department did not meet its statutory burden at trial of proving by clear and convincing evidence that the parents failed to meet the court-ordered conditions for the children's return. The parents explain that the Department cannot meet this burden when the circuit court did not order the Department to provide specific services to the parents.[2]
*388 ¶ 88 The majority opinion is defective in the following respects:
¶ 89 First, the majority opinion unnecessarily writes in broad strokes, and mistaken ones at that. The majority risks consequencessome apparent, some no doubt unforeseenfor all future termination of parental rights cases.
¶ 90 This case should be decided, in accordance with sound appellate practice, on the narrowest grounds.[3] In doing so, I conclude, as did the circuit court, that the parents forfeited their objection to the circuit court's deficient March 30, 2004, dispositional orders. In contrast, the majority opinion chooses to "assume without deciding" that the parents did not forfeit their objection to the sufficiency of the dispositional order. Majority op., ¶ 29. The majority inexplicably bypasses this opportunity for judicial restraint.
¶ 91 Second, in interpreting Wis. Stat. § 48.355(2)(b)1., the majority fails to heed the plain words of the statute. Instead, the majority opinion rewrites the statute in violation of the doctrine of separation of powers.
¶ 92 Third, in rewriting Wis. Stat. § 48.355(2)(b)1. to render the dispositional order in the present case compliant with the statute, the majority may present constitutional problems in the future. Termination of parental rights is a severe form of state action and requires heightened legal safeguards.[4] The majority lessens the legislatively prescribed protections afforded the parents.[5]
¶ 93 Fourth, the court imposes unfunded mandates on county departments of health and human services.

I
¶ 94 This case should be decided against the parents on the ground of forfeiture. Forfeiture is the failure to make the timely assertion of a right.[6] A primary purpose of the forfeiture rule is to require the parties to give notice of the issue to the circuit court and allow the circuit court an opportunity to address it.[7] The forfeiture rule guards against eleventh-hour surprises.[8] Here the parents and the Department *389 worked under the terms of the dispositional orders for over four years, without any parental objection to the contents of the orders.
¶ 95 The termination proceedings at issue in the instant case were not initiated until nearly four years after the circuit court entered the dispositional orders on March 30, 2004. Majority op., ¶ 9. For four years, the parents knew the content of the dispositional orders and worked under them. Yet, as the majority explains, at no point in that time did the parents challenge the sufficiency of the dispositional order. Majority op., ¶ 39. Absent such a challenge, the court was not given the opportunity to repair the dispositional orders.
¶ 96 Nor did the parents raise the sufficiency of the dispositional order at trial. Indeed, the issue was not raised until the last day of the five-day proceeding, and then only by the jury, not the parents.
¶ 97 In accordance with the law, the jury was asked to answer the following question: Did the Department "make a reasonable effort to provide the services ordered by the court?" During deliberations, the jury submitted a question asking: "Are [sic] the explanation of the provisions listed as the services that were ordered by the court in [this question] of verdict?" Majority op., ¶ 11-12.[9] Even then, the parents failed to register any complaint. Rather, they consented to the court's proposed response without objection. Majority op., ¶ 12.
¶ 98 An additional 30 minutes passed and the jury persisted by asking two additional clarifying questions relating to the services to be provided: "What exactly were the services ordered by the court? Are the services ordered by the court contained in the conditions of return?" In response to the jury's second question, the circuit court responded, "No." Majority op., ¶¶ 12-15.[10]
¶ 99 Before the circuit court sent its responses to the jury, the mother moved to dismiss the petitions on the insufficiency of the dispositional orders. The circuit court took the motion under advisement. After the circuit court granted judgment against the parents, the mother renewed her motion, which was denied.
¶ 100 I conclude on the basis of the facts of the present case that the parents forfeited their objection to the sufficiency of the dispositional orders. I would therefore affirm the orders of the circuit court terminating parental rights on the ground of forfeiture.

II
¶ 101 The parents argue that the dispositional orders did not meet the statutory standard set forth in Wis. Stat. § 48.355(2)(b)1., which provides that the circuit court shall issue a written order that shall contain the specific services to be provided to the child and family. Wisconsin Stat. § 48.355(2)(b) provides in relevant part as follows:
48.355(2)(b) The court order shall be in writing and shall contain:

1. The specific services to be provided to the child and family, to the child expectant mother and family, or to the adult expectant mother and, if custody *390 of the child is to be transferred to effect the treatment plan, the identity of the legal custodian (emphasis added).
¶ 102 The general rule is that the word "shall" in a statute is presumed mandatory unless a different interpretation is needed to carry out the clear intent of the legislature.[11] The majority does not dispute that "shall" is mandatory in Wis. Stat. § 48.355(2)(b)1. The court of appeals, in In the Interest of F.T., 150 Wis.2d 216, 225, 441 N.W.2d 322 (1989), carefully analyzed the use of the words "shall" and "may" in various provisions in Wis. Stat. § 48.355(2)(b) and interpreted the word "shall" to be mandatory. The court of appeals' decision reflects established Wisconsin law, is persuasive, and should not be discarded.[12]
¶ 103 Interpreting the word "shall" as mandatory, I conclude that the dispositional orders did not meet the statutory requirements under Wis. Stat. § 48.355(2)(b)2. I attach a copy of the dispositional order for the reader's ease of following my reasoning and that of the majority. The order is a form prescribed by the Judicial Conference and its use is mandated; the form may be supplemented. See Wis. Stat. §§ 758.18, 971.025; SCR 70.153.
¶ 104 Item 4 of the form circuit court order is entitled "Conditions of supervision and/or return." The circuit court inserted various acts the parents must perform.[13]
¶ 105 Item 6 of the form circuit court order is entitled "Services to be provided to child and family." No services are listed by the circuit court. Furthermore, the box on the form circuit court order entitled "see court report" is not checked.[14]
¶ 106 Item 7 of the form circuit court order is entitled "Agency/person responsible for supervision/services/case management." The letters "DHSS" were inserted by the circuit court. With item 6 left blank, item 7 does not make clear, much less specific, what services the DHSS is to provide.
¶ 107 The plain text of the statute mandates that the written court order shall contain the specific services to be provided. The majority explicitly acknowledges the obvious, stating, "... there was no attached court report listing the services to be provided to the children and family." Majority op., ¶ 7 (emphasis added). Thus the majority concedes that the statutory standard was not met in the present case.
¶ 108 Nevertheless, the majority soldiers on to somehow conclude that the dispositional orders in the present case did contain "specific services" as required by the statute. The majority reasons as follows: the statute does not require the order to "separately list each individual service that the Department is to provide so long as *391 the Department is ordered to provide `supervision,' `services' and `case management' and the order also provides detailed conditions that the parents must complete in compliance with the dispositional order." Majority op., ¶ 33.
¶ 109 The majority reaches the absurd and inherently contradictory conclusion that the "specific services" standard identifying the state's obligations for assistance was met by the "implicitly" required services as elucidated in the parent's obligations under conditions of return.[15]See majority op., ¶¶ 34-38. The majority thus rules that orders that contain "implicitly stated services" satisfy the statutory requirement that orders "contain the specific services to be provided."
¶ 110 The majority's very own reasoning demonstrates that the circuit court's dispositional order does not contain the specific services to be provided to the child and family as required by Wis. Stat. § 48.355(2)(b)1.[16]
¶ 111 In contrast to the majority opinion, and certainly more candidly, the same circuit court judge who prepared the dispositional orders in March 2004 concluded at the termination of parental rights trial that his own orders "did not direct the provision of any services." I agree with the circuit court.
¶ 112 By deciding that the conditions for return satisfy the "specific services" requirement under Wis. Stat. § 48.355(2)(b)1., the majority has created a different statutory provision than the legislature adopted. The majority opinion violates "the principle that it is the legislature that chooses the words of a statute."[17] The majority thus usurps a power not vested in this court and offends the fundamental doctrine of separation of powers embodied in the Wisconsin Constitution.[18]
¶ 113 The dispositional orders in the present case do not comply with the plain meaning of Wis. Stat. § 48.355(2)(b)1., but the parents have forfeited their challenge to the dispositional orders.

III
¶ 114 As the majority recognizes, terminations of parental rights involve "`the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'"[19] The legislature thus carefully mandated a procedure for termination of parental rights, including numerous matters to be included in a circuit court dispositional order.
*392 ¶ 115 The legislature further mandates in Wis. Stat. § 48.355(2)(d) that the circuit court shall "provide a copy of a dispositional order relating to a child in need of protection or services to the child's parent...."
¶ 116 The purpose of detailing the matters to be included in the order and requiring a copy of the written order to be given to the parents is to advise the parents (and others) fully about the conditions they must meet and the assistance they can expect from the Department. If, however, parents must extrapolate the services they are to be provided from various parts of the order, the notice is ineffectual. Yet notice is an essential aspect of procedural due process.
¶ 117 Still, the majority ignores the statutes requiring the circuit court to give the parents explicit, clear information. Instead the majority frustrates the statutory directives and the legislature's constitutionally protective intent by allowing implicit requirements to run rampant in its analysis.
¶ 118 Considerations of clarity and adherence to basic principles of due process of law lead me to conclude that the majority's interpretation of the statute and the order is inconsistent with the purpose of the statutory notice requirement and may present constitutional due process issues in the future.

IV
¶ 119 In its result-oriented effort to save the dispositional orders here, the majority seemingly allows future dispositional orders to be interpreted to impose unfunded mandates on the county. Thus the Department has won the present "battle" but may have lost the greater "war," that is, it may have lost its argument that the dispositional order should not be read to mandate that county health and human services departments "underwrite, structure, staff and provide the entire panoply of `services' contemplated in these CHIPS cases." The Department's brief explains:
In the current state of national and regional economic recession and resulting draconian cuts in budgets for social services, it is highly unrealistic to presume that county Health & Human Services departments throughout the state, particularly those in smaller counties with smaller budgets, would have the resources to unilaterally underwrite, structure, staff and provide the entire panoply of `services' contemplated in these CHIPS cases which range from simple parenting classes to psychosocial evaluations and ongoing drug and alcohol counseling.[20]
¶ 120 Troublingly, the majority opinion appears to do just what the Department has feared. For example, item Number 7 of the form dispositional order is entitled "Agency/person responsible for supervision/services/case management." The majority *393 opinion reads these words in the form as directing the Department to provide "supervision," "services," and "case management." The majority then turns to item 4 in the form dispositional order, which states "the conditions of supervision and/or return." The conditions the circuit court imposed address only the parents' obligations to meet conditions to have the child returned. From item numbers 7 and 4, the majority extrapolates that the circuit court ordered specific services be provided or "arranged" by the Department.
¶ 121 Thus, one condition for return in the circuit court order dispositional order states that "Tanya and William will go to any parenting or nurturing program set up by the worker and attend any community-based programs recommended by their worker." The condition for return imposes only an obligation on the parents to attend a program in the event that one is set up or recommended by their social worker. Nowhere do the dispositional orders explicitly impose an obligation on the Department about a program. Yet the majority asserts that "[i]mplicit in this condition is an order that the Department arrange for a parenting or nurturing program for the parents to attend, i.e., a specific service." Majority op., ¶ 34 (emphasis added). Other conditions imposed on the parent are similarly transformed by the majority into an order that the Department provide or "arrange for" various services.
¶ 122 There is no limit to the potential extrapolation of the Department's obligations from the conditions of return. Unless the court order explicitly enumerates the "specific services to be provided to the child and family," one can extrapolate from the conditions placed upon the parents many services that the Department becomes obligated to provide either directly or through arrangements with others.
¶ 123 Thus the majority appears to impose unfunded responsibilities on the Department, emanating from the conditions for return imposed on the parents. I do not think that the circuit court or the legislature intended this result.
¶ 124 Further, while the Department is obligated to provide various services, see majority op., ¶ 34, the majority offers only hazy guidelines as to what the obligations are, how they may be adequately satisfied, and who pays for the services. The majority fails to offer useful guidance to the circuit courts or departments about how they must now proceed.
¶ 125 In sum, I conclude that Wis. Stat. § 48.355(2)(b)1. mandates that a circuit court dispositional order must either contain the specific services the court orders or explicitly state that no services are ordered. A circuit court can order the specific services statutorily required, giving the Department discretion in how to provide services and the opportunity to change services as circumstances require.
¶ 126 In the instant case, although the dispositional order did not meet the statutory requirement, the parents forfeited any challenge to the dispositional order on the ground that the dispositional order did not contain the specific services to be provided.
¶ 127 For the reasons set forth above, I concur.
¶ 128 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.
*394 
*395 
*396 
*397 
NOTES
[1] Sheboygan County Dep't of Health & Human Servs. v. Tanya M.B., Nos. 2008AP3065, 2008AP3066, 2008AP3067, 2009AP136, 2009AP137 and 2009AP138, 2009 WL 1139338, unpublished slip op. (Wis.Ct.App. Apr. 29, 2009).
[2] The Honorable Gary Langhoff of Sheboygan County presided.
[3] All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.
[4] Throughout the proceedings, the orders have been referred to as "dispositional orders," "CHIPS dispositional orders" and "CHIPS orders." We use these terms interchangeably to refer to orders finding the children in need of protection or services.
[5] The orders listed "DHSS" as the agency responsible for providing supervision, services and case management. This acronym refers to the Department of Health and Social Services, Division of Social Services.
[6] Wisconsin Stat. § 48.424(4) states in relevant part: "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit."
[7] Wisconsin Stat. § 48.355(2)(b)1. (2003-04) (emphasis added) stated:

(b) The court order shall be in writing and shall contain:
1. The specific services or continuum of services to be provided to the child and family, to the child expectant mother and family or to the adult expectant mother, the identity of the agencies which are to be primarily responsible for the provision of the services ordered by the judge, the identity of the person or agency who will provide case management or coordination of services, if any, and, if custody of the child is to be transferred to effect the treatment plan, the identity of the legal custodian.
[8] Wisconsin Stat. § 48.355(2)(b)1. (2007-08) (emphasis added) states:

(b) The court order shall be in writing and shall contain:
1. The specific services to be provided to the child and family, to the child expectant mother and family, or to the adult expectant mother and, if custody of the child is to be transferred to effect the treatment plan, the identity of the legal custodian.
[9] This argument was best articulated by the Department at oral argument. However, at times, the Department's briefs suggested that it was conceding that the dispositional orders did not contain "specific services" as required by Wis. Stat. § 48.355(2)(b)1. For example, the Department's brief stated, "The dispositional order itself did not specifically list services that the Department was required to provide." We need not accept this concession of law. See State v. Lord, 2006 WI 122, ¶ 6, 297 Wis.2d 592, 723 N.W.2d 425 ("This court, not the parties, decides questions of law.").
[10] In their briefs, Tanya and William argued that they are not challenging the sufficiency of the dispositional orders; instead, they submit that they are challenging only the Department's failure to meet its burden of proof at trial. They argued that the "absence of the mandatory written court-ordered specific services in the CHIPS dispositional orders precludes the petitioner from clearly and convincingly proving that it made a reasonable effort to comply with such orders." However, the parents fail to recognize that their burden of proof challenge necessarily encompasses a challenge to the sufficiency of the underlying dispositional orders.

The parents' briefs demonstrate this point. Tanya's brief stated: "The CHIPS dispositional orders in these cases were negligently drafted ... and the orders failed to list the services that [the Department] was to provide to the parents." It went on to state that the "orders failed to identify the specific services required to be provided to the children and the family by [the Department] under the provisions of sec. 48.355(2)(b)1." William's brief mounted similar arguments.
Additionally, such a suggestion is at odds with Tanya's original motion to dismiss, which William later joined. The initial motion was made off the record, which the court reiterated on the record as follows: "Mr. Falk, [counsel for Tanya,] has also requested to interpose a motion to dismiss based upon the fact that the dispositional order does not set forth the specific services as required under Section 48.355(2)[(b)1]."
We conclude that the parents do challenge the sufficiency of the dispositional orders; therefore, we address those arguments. We also address the parents' argument regarding the Department's alleged failure to meet its burden of proof in section II.C. infra.
[11] In its written decision and order denying the parents' motion to dismiss the termination of parental rights petitions, the circuit court concluded: "From the court's perspective the CHIPS order ... failed to comport with the mandate of [Wis. Stat.] § 48.355(2)(b)1., ... in that the order did not delineate specific services to be provided to the children and family by the Department...." This conclusion conflicts with the circuit court's earlier response to the first jury question in which it informed the jury that "[t]he court-ordered services contained in the dispositional orders and revised dispositional orders were the conditions the parents were required to meet for return of the children."

The court of appeals also concluded that "the dispositional orders fail to comply with the statutory mandate." Sheboygan County, No. 2008AP3065, 2009 WL 1139338, unpublished slip op., ¶ 10. In any event, determining whether the dispositional orders contained "specific services" as required by Wis. Stat. § 48.355(2)(b)1. is a question of law that we review independently. See Estate of Genrich v. OHIC Ins. Co., 2009 WI 67, ¶ 10, 318 Wis.2d 553, 769 N.W.2d 481.
[12] The Due Process Clause in the Fourteenth Amendment of the United States Constitution states in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law."
[13] Wisconsin Stat. § 48.01(1) states in relevant part: "In construing this chapter, the best interests of the child or unborn child shall always be of paramount consideration."
[14] The parents do not argue that the Department provided insufficient services to Tanya and William. Quite the opposite, the parents concede that the Department provided them with extensive services during the four years this action proceeded. The following exchange from oral argument illustrates this point.

[Court]: Is there any insufficiency in terms of the evidence [or] the record that services were provided to the parents?
[Counsel for Tanya]: No. I am not arguing that the parents did not receive significant services from the Human Services Department. I am not making that argument.
[Court]: Is there some particular service that [the parents] should have received that they didn't receive?
[Counsel]: No.
[15] At trial, William described 16 treatment programs in which he has participated. Most of the treatment programs were administered through the Department of Corrections in prison or as alternatives to revocation.
[16] The evaluation assessed all the areas of Tanya's life and identified any other areas of difficulty not related to alcohol or drugs so that the Department could assist in providing treatment for those problems as well. The evaluation identifies such areas of difficulty by considering a person's childhood, legal history, familial history, education, work experience and using history. Tanya's assessment diagnosis indicated she had polysubstance dependency in remission.
[17] Tanya's son, Shannon, is not a party to this proceeding, and William is not Shannon's father.
[1] All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

As the majority explains, the language of the 2003-04 statute is less exacting, and therefore "it is not necessary for us to determine which version of the statute controls here." Majority op., ¶ 32.
[2] Wisconsin Stat. § 48.415(2) allows for termination of parental rights if grounds are proved, that is, if it can be proven, among other factors, "that the agency responsible for the care of the child and family ... has made a reasonable effort to provide the services ordered by the court." See also Wis. Stat. § 48.345 (requires the court, in dispositions of a child adjudged in need of protection or services, to order an agency to provide specified services).

The parents are not asserting that the Department failed to provide them services. Rather, their complaint is only that the dispositional order did not state the specific services to be provided as required by the statute.
[3] State v. Castillo, 213 Wis.2d 488, 492, 570 N.W.2d 44 (1997).
[4] Evelyn C.R. v. Tykila S., 2001 WI 110, ¶¶ 20-21, 246 Wis.2d 1, 629 N.W.2d 768. See also Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.")
[5] The majority's recognition that "termination proceedings require heightened legal safeguards" makes particularly inexplicable its choice to lower the procedural requirements under § 48.355(2)(b)1. and thus the state's obligations in making a detailed and specific showing of the necessity of terminating parental rights. Majority op., ¶ 50.
[6] State v. Ndina, 2009 WI 21, ¶ 29, 315 Wis.2d 653, 761 N.W.2d 612 (quoting United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).
[7] Ndina, 315 Wis.2d 653, ¶ 30, 761 N.W.2d 612.
[8] Ndina, 315 Wis.2d 653, ¶ 30, 761 N.W.2d 612.
[9] The circuit court answered as follows: "The court-ordered services contained in the dispositional orders and revised dispositional orders were the conditions the parents were required to meet for return of the children." No one objected to this response.
[10] In contrast, the majority concludes that the services ordered by the court were contained in the conditions of return.
[11] In Matter of E.B., 111 Wis.2d 175, 185-86, 330 N.W.2d 584 (1983).
[12] In the Interest of F.T., 150 Wis.2d 216, 225, 441 N.W.2d 322 (1989). F.T. related to juvenile proceedings. The statute at issue in F.T. is substantially similar to the present Wis. Stat. § 48.355. At the time of F.T., the statute covered both CHIPS and juvenile proceedings. The reasoning of F.T. regarding the mandatory nature of the word "shall" in the statute is still applicable to the present statute covering CHIPS cases.
[13] These conditions are based on the recommendations set forth in a Memo dated March 23, 2004, that the Sheboygan Department of Health and Human Services provided to the circuit court.
[14] A court report prepared by the Department in connection with the CHIPS proceedings stated that "[t]he family will receive services through Sheboygan County Department of Human Services Child Protection Ongoing Unit."
[15] If the conditions of return are the same as the specific services to be provided, as the majority asserts, it is superfluous for the form dispositional order to separate services and conditions. The form, as well as the statute, undercuts the majority's reasoning.
[16] The majority's fallacious interpretation is demonstrated by examining Wis. Stat. § 48.355(2)(b)7., which provides that the written court order shall contain "a statement of the conditions with which the child or expectant mother is required to comply." By construing the conditions mandated by Wis. Stat. § 48.355(2)(b)7. as the specific services required by Wis. Stat. § 48.355(2)(b)1., the majority merges two subsections and treats them as synonymous.
[17] Burbank Grease Servs., LLC v. Sokolowski, 2006 WI 103, ¶ 25, 294 Wis.2d 274, 717 N.W.2d 781.
[18] "The separation of powers doctrine is violated when one branch interferes with the constitutionally guaranteed exclusive zone of authority vested in another branch." Martinez v. DILHR, 165 Wis.2d 687, 697, 478 N.W.2d 582 (1992).
[19] Majority op., ¶ 49 (quoting Evelyn C.R., 246 Wis.2d 1, ¶ 20, 629 N.W.2d 768) (internal citations and quotations omitted).
[20] Petitioner-Respondent-Petitioner's Brief at 11.

In its reply brief the Department further explains its position as follows:
[T]here is not a statutory duty for the Department to formally provide services which are often in fact provided by other agencies.... Common sense recognizes that it [is] a rare social services department which has the resources to provide the complex multitude of classes, counseling resources, and, at times, inpatient treatment which parents in a CHIPS action may require to bring their parenting conduct to an acceptable level. That has certainly not been the case here, where a vast majority of the services given to the parents were supplied by agenciessome governmental, some non-profit, some funded partly by county fundsother than the Department.
Petitioner-Respondent-Petitioner's Reply Brief at 6-7.