**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 29, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1260**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2021TP5**

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.M., A PERSON UNDER THE AGE OF 18:

JUNEAU COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

R.M.,

    RESPONDENT-APPELLANT.

         APPEAL from an order of the circuit court for Juneau County: DANIEL G. WOOD, Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] R.M. appeals the circuit court's order terminating her parental rights to her son M.M. The court first found that R.M. is an unfit parent based on a jury's findings that M.M. is a child in continuing need of protection or services (CHIPS) and that R.M. failed to assume parental responsibility. *See* WIS. STAT. § 48.415(2) and (6). The court then determined that termination of R.M.'s parental rights would be in M.M.'s best interest. R.M. argues that: (1) there is insufficient evidence to support the jury's verdicts as to the continuing CHIPS and failure to assume parental responsibility grounds on which the court based its determination that R.M. is an unfit parent; and (2) the court erroneously exercised its discretion in determining that termination of R.M.'s parental rights was in M.M.'s best interest by improperly weighing the statutory factors. For the reasons set forth below, I reject R.M.'s arguments and affirm.

## BACKGROUND

¶2 R.M. is the mother of M.M., who was born on November 25, 2014.

¶3 M.M. was removed from R.M.'s home and taken into custody on January 2, 2019, after his sister was diagnosed as suffering from "definite physical abuse." On June 27, 2019, the circuit court found M.M. to be in need of protection or services under WIS. STAT. §§ 48.13(3m) (risk of abuse) and 48.13(10) (neglect). On the same day, the circuit court entered a dispositional order that formally placed M.M. outside of R.M.'s home and contained conditions

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

for R.M. to complete for M.M. to be returned. Termination of parental rights warnings were given at that time.

¶4     M.M. was returned to R.M.'s home on July 7, 2020 and again removed from R.M.'s home on November 30, 2020.

¶5     On May 27, 2021, Kassandra Murphy, the Juneau County case worker assigned to M.M., filed a petition for termination of parental rights. The petition alleged that grounds for the termination of R.M.'s parental rights existed under WIS. STAT. § 48.415(2) (continuing CHIPS) and (6) (failure to assume parental responsibility).

¶6     On January 27, 2022, a three-day jury trial commenced, at which the following witnesses testified:  Murphy (the case worker), a drug and alcohol counselor who provided counseling to R.M., a psychotherapist who met with and prepared an assessment of R.M., a psychologist who prepared evaluations of R.M. and M.M., and another psychologist who prepared an independent evaluation of R.M.  A former Elroy police officer also testified about a search warrant executed on R.M.'s Elroy residence in 2019.

¶7     At the conclusion of the testimony and closing arguments, the jury returned verdicts finding grounds for termination based on continuing CHIPS and failure to assume parental responsibility.  The circuit court found that R.M. was an unfit parent based on those verdicts.

¶8     At the conclusion of the dispositional hearing held on March 14, 2022, the circuit court determined that termination of R.M.'s parental rights was in M.M.'s best interest.  R.M. appeals.

## DISCUSSION

### I. Applicable Legal Principles and Standard of Review.

¶9    "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.   The first phase is the fact-finding hearing "to determine whether grounds exist for the termination of parental rights." *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402 (quoting WIS. STAT. § 48.424(1)).   During this "grounds" phase, "the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist."  *Steven V.*, 271 Wis. 2d 1, ¶24.   The relevant grounds in this case are WIS. STAT. § 48.415(2) (continuing CHIPS) and § 48.415(6) (failure to assume parental responsibility).

¶10    At the conclusion of the fact-finding hearing, a jury or the circuit court determines "whether any grounds for the termination of parental rights have been proved." WIS. STAT. § 48.424(3).  "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." Sec. 48.424(4).  "A jury's verdict must be sustained if there is any credible evidence, when viewed in a light most favorable to the verdict, to support it."  *Sheboygan Cnty. DHHS v. Tanya M.B.*, 2010 WI 55, ¶49, 325 Wis. 2d 524, 785 N.W.2d 369.

¶11    To determine if parental rights should be terminated, the proceeding moves to the second "dispositional" phase, a dispositional hearing to determine the best interest of the child.  *Julie A.B.*, 255 Wis. 2d 170, ¶28.  A circuit court exercising its discretion in determining the appropriate disposition "shall consider the standard and factors enumerated in" WIS. STAT. § 48.426(2) and (3)

4

respectively. *See* § 48.426(1). "The best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings." Sec. § 48.426(2). After the dispositional hearing, the court may enter an order terminating the parental rights of the parent, or it may dismiss the petition if it finds that the evidence does not warrant termination. *Julie A.B.*, 255 Wis. 2d 170, ¶28.

¶12    In making its determination regarding disposition, the circuit court must consider the following statutory factors, as well as any other factors the circuit court determines are applicable:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

¶13    "While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor." *Darryl T.-H. v. Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475. This court will not overturn a

circuit court's decision on disposition in a termination of parental rights proceeding unless the circuit court erroneously exercised its discretion. ***David S. v. Laura S.***, 179 Wis. 2d 114, 150, 507 N.W.2d 94 (1993).

## II. Analysis

¶14    R.M. challenges the jury's verdicts at the grounds phase and the circuit's court weighing of the statutory factors at the dispositional phase.   I address each challenge in turn.

### A.  Grounds for Termination of Parental Rights

¶15    As stated, the jury found both the continuing CHIPS and failure to assume parental responsibility grounds for terminating R.M.'s parental rights to M.M.   Under the statute, only one of the statutory grounds need be found to support a circuit court's finding that a parent is unfit.   WIS. STAT. § 48.415 ("Grounds for termination of parental rights shall be one of the following:"); WIS. STAT. § 48.424 ("If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit."); ***Steven V.***, 271 Wis. 2d 1, ¶24. Because I conclude that credible evidence supports the jury's verdict as to the continuing CHIPS ground, I need not, and do not, address R.M.'s challenge to the failure to assume parental responsibility ground.

¶16    Under WIS. STAT. § 48.415(2), continuing CHIPS can be established by proving any of the following:

> (a)(1) That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders….
>
> ….

6

(2)b. That the agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.

(3) That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order … [and] that the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home for less than 15 of the most recent 22 months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

¶17     R.M. argues that the County failed to prove the elements of the continuing CHIPS ground, focusing on the element "that the parent has failed to meet the conditions established for the safe return of the child to the home." WIS. STAT. § 48.415(2)(a)3. R.M. supports her argument by pointing to evidence that she provided safe housing for M.M., maintained a bond with M.M., attempted to get M.M. into therapy, and maintained a good relationship with M.M.'s foster parents. R.M. also points to evidence that she completed Alcohol and Other Drug Abuse (AODA) treatment, a psychological examination, and anger management, and that she underwent consistent drug testing through the filing of the TPR petition and drugs have not been found in her home since 2019.

¶18     However, R.M. disregards the evidence that supports the jury's specific finding that she failed to meet the conditions established for the safe return of M.M. to her home. As to providing safe suitable housing (condition 3.b.), there is credible evidence showing that the housing R.M. provided for M.M. was not always safe and was frequently impermanent. Specifically, between January 2019 and February 2020, R.M. lived in at least four different places.

Beginning in February 2020, R.M. had a residence for several months, but she told Murphy that there were unsafe people coming to the residence and that the landlord's boyfriend exposed himself to one of R.M.'s teenage daughters there. R.M. left her next residence after a few months when the building was boarded up with sheet metal to prevent her reentry. The landlord at that residence also provided M.M. alcohol when M.M. was allowed to go downstairs to a bar with the landlord.

¶19 As to the strength of R.M's bond with M.M. and maintaining visits with him (condition 3.c.), there is credible evidence showing that R.M.'s actions were detrimental to maintaining a bond with M.M. and that she missed many visits. Specifically, R.M. missed almost half of her visits with M.M. from November 2020 to May 2021, and there were issues when visits did occur. These include R.M. ignoring M.M., saying "inappropriate things" to him, and allowing other children to make fun of M.M. for wetting the bed, and M.M. choosing to use his tablet or a phone instead of interacting with R.M. R.M. missed enough visits that it was requested she confirm each visit beforehand so that M.M. would not be transported to the visit and R.M. would not be there, which was not "a good environment for him."

¶20 As to R.M.'s relationship with M.M.'s foster parents, there is no record evidence of that relationship. Moreover, regardless of the nature of that relationship, the court-ordered conditions required that R.M. maintain monthly contact with all of M.M.'s providers (condition 3.d.), and there is credible evidence that R.M. did not maintain contact with other providers including M.M.'s primary doctor, dentist, physical therapist, mental health therapist, and school teachers. Specifically, R.M. did not know M.M.'s primary doctor's name and did not attend the appointment or follow up with his doctor, did not know the name of

or contact M.M.'s therapist, and attended only one of six physical therapy appointments and one of five dentist appointments for M.M. without making any further contact with either provider. R.M. also had no contact with M.M.'s school teachers.

¶21 As to R.M.'s own AODA treatment and drug testing (conditions 3.e. and 3.f.), credible evidence shows that R.M. did not follow recommendations to continue with further AODA counseling and, since the petition for termination of parental rights was filed, she refused tests or did them improperly.

¶22 As to other court-ordered conditions, there is uncontroverted testimony that R.M. did not stay in touch and cooperate with the county social worker and did not inform the Juneau County Department of Health Services of address changes (condition 3.a.), and that she refused to participate in mental health therapy (conditions 3.g., 3.i., 3.j.).

¶23 In sum, credible evidence supports the jury's verdict as to the continuing CHIPS ground.

**B. Best interest of the child**

¶24 R.M. challenges the circuit court's dispositional phase determination that termination of her parental rights is in the best interest of the child, based on the court's asserted improper weighing of the statutory factors. Specifically, R.M. argues that the court emphasized the facts surrounding M.M.'s removal and insufficiently weighed the recent efforts R.M. has made or her continuing expression of her love for M.M. and her desire to have him returned to her home.

¶25 The record shows that the circuit court properly applied the correct standard of law and considered each of the statutorily required factors. The court

explicitly mentioned each factor and point-by-point explained its conclusion on each one. The court also addressed R.M.'s love for M.M. but noted that "[M.M.] does not -- or did not reciprocate [R.M.'s] overtures including hugs and … expressions of love after the last visit that was held." The court also addressed the past trauma that R.M. experienced in her own life as it related to her drug use and residential instability, and acknowledged her recent efforts to improve her life. However, the court ultimately weighed all of these facts along with the statutory factors and determined that termination of R.M.'s parental rights was in M.M.'s best interest. R.M. essentially asks that this court reweigh the factors in her favor. However, it is not the role of an appellate court to exercise the circuit court's discretion. *Krier v. EOG Env't, Inc.*, 2005 WI App. 256, ¶24, 288 Wis. 2d 623, 707 N.W.2d. 915. Rather, the appellate court's role is only to review whether the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 415, 320 N.W.2d 175 (1982). Because the circuit court did so here, R.M. has failed to show that the court erroneously exercised its discretion.

## CONCLUSION

¶26 For the reasons discussed above, the circuit court's order is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

10