COURT OF APPEALS
DECISION
DATED AND FILED

February 7, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP2186**

STATE OF WISCONSIN

Cir. Ct. No.  2023TP134

IN COURT OF APPEALS
DISTRICT I

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.R.H.S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

R.J.S.,

      RESPONDENT-APPELLANT.

---

      APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed*.

¶1 COLÓN, J.[1] Roy appeals from the circuit court's order terminating his parental rights to his daughter Kim.[2] Roy challenges the sufficiency of the evidence supporting the State's alleged grounds to terminate his parental rights and argues that the circuit court erroneously exercised its discretion when it found that the termination was in Kim's best interest. For the following reasons, this court affirms the circuit court's order.

## BACKGROUND

¶2 Kim was born in April 2022. Shortly after her birth, Kim was taken into temporary physical custody by the Division of Milwaukee Child Protective Services (DMCPS) due to concerns about Kim's safety stemming from her mother's substance abuse during her pregnancy with Kim and Roy's involvement by providing Kim's mother with drugs.

¶3 In December 2022, the circuit court found that Kim was a child in need of protection or services (CHIPS). The CHIPS dispositional order outlined the conditions that must be met for Kim to be safely returned to her parents' care. These conditions required Roy to commit no crimes, supervise and place Kim's

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within [thirty] days after the filing of the appellant's reply[.]" RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to *sua sponte* extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

[2] For ease of reading, we adopt the pseudonyms used by the State to refer to the family in this confidential matter. *See* WIS. STAT. RULE 809.19(1)(g).

needs above his own, and provide safe care for her. To help Roy meet these conditions, DMCPS was ordered to make a reasonable effort to provide him with the following services: urine testing and drug treatment services if necessary, "individual therapy, parenting assistance/classes, [and] case management."

¶4 On August 30, 2023, the State filed a petition for the termination of Roy's parental rights.[3] As grounds for the termination of Roy's parental rights the State alleged that Kim remained a child in need of protection or services under WIS. STAT. § 48.415(2) (continuing CHIPS) and that Roy failed to assume parental responsibility under § 48.415(6). A jury trial was held during which testimony was heard from the initial assessment specialist who placed Kim in out of home care, Roy, two prior case managers, the prior case supervisor, and the current case manager.

¶5 At trial Roy testified that he failed to meet the conditions of return and discussed how his incarceration disrupted his progress in meeting the conditions. He agreed that he had been arrested after a traffic stop incident in February 2023 during which police stopped his vehicle for driving in excess of 100mph and found a loaded firearm, that he was prohibited from having, and controlled substances on his person. As a result and pursuant to plea negotiations, Roy pled guilty to the felon in possession of a firearm charge and was incarcerated.

¶6 Roy testified that prior to his incarceration he completed one urine test and did not recall receiving any other referrals for further testing. Regarding

---

[3] The State also sought to terminate Kim's mother's parental rights. The mother's rights are not at issue in this appeal.

parenting, he stated that he attended some of the parenting classes referred by his case manager but did not complete them. Roy further testified that fourteen supervised visitations were available for him and Kim, and does not dispute that he failed to attend all of the scheduled visits and was late to some of them. He also discussed how he did not feel comfortable reaching out to the foster parents himself and would instead rely on his mother to contact the foster parents for updates on Kim.

¶7    Roy's first case manager corroborated Roy's testimony that he had only completed one urine test; however, she also testified that she had discussed the importance of continuous testing with Roy and had made multiple referrals for additional tests that he never completed. She also discussed how Roy had never gone through the process to become Kim's legally adjudicated father and was therefore unable to sign consents for any of Kim's medical treatments. Roy's current case manager also testified that Roy had not been legally adjudicated as Kim's father since she took over the case and that this posed a barrier to providing Kim with necessary services.

¶8    After hearing all of the witness's testimony, the jury found that the State had proven both the continuing CHIPS and failure to assume parental responsibility grounds. Roy subsequently moved for judgment notwithstanding the verdict and the circuit court denied the motion stating, "I do believe that the evidence submitted at trial fairly supports the verdict that was rendered by the jury[.]" The court then found Roy unfit and proceeded to the dispositional phase.

¶9    At disposition the circuit court heard from the foster mother, the current case manager, and Roy. The foster mother testified that she had been caring for Kim since Kim was eleven days old as well as for Kim's biological

half-sister, who was eleven years old at the time, whom the foster mother had previously adopted. The foster mother explained that Kim has a bond with herself, her husband, and Kim's half sister, and that Kim refers to her foster parents as mom and dad. She also stated that she is committed to adopting Kim and meeting all of her future needs. She further testified that she believes it is important for Kim to maintain a bond with Roy and Kim's paternal grandmother, and that she would be willing to allow for Roy to continue to have contact with Kim post-adoption so long as it is safe and appropriate.

¶10 The current case manager corroborated the foster mother's testimony and opined that Kim did not have substantial emotional bonds with either Roy or her paternal grandmother. Roy then testified that he would be willing to complete his conditions of return and participate in the court ordered services after he is released from incarceration. He also emphasized that he loves Kim and is highly motivated to parent her.

¶11 The circuit court ultimately found that it was in Kim's best interests to terminate Roy's parental rights. In deciding so the court considered the circumstances and made findings regarding the factors listed in WIS. STAT. § 48.426. The court found that the likelihood of adoption was "very high"; that Kim had been living with the foster parents since she was eleven days old; and that Roy has "some way to go yet before becoming stable enough to become the full-time caregiver for [Kim]."

¶12 The circuit court discussed Kim's relationships with her biological family members. The court found that Kim did not have a substantial relationship with any family members other than her half sister. The circuit court explained that Kim had a relationship with her paternal grandmother but that this relationship

was not substantial because her grandmother only visited her once in person and participated in only "a handful of video visits[.]" Regarding Roy, the court recognized that "[Roy] tried his best" and "wanted to establish a substantial relationship," but he never had sufficient contact with Kim necessary to establish a substantial relationship with her. The court also found that it would not cause Kim harm to sever the legal relationship between Roy and Kim and noted that their "emotional relationship is one that can continue" and is "incumbent on [Roy] and [the foster parents] to do the things necessary to make sure that that continues."

¶13    Roy appeals. Additional relevant facts are discussed below.

## DISCUSSION

¶14    Termination of parental rights proceedings involve two phases: a grounds phase to determine whether there are grounds to terminate a parent's rights, and a dispositional phase, to determine whether termination is in the child's best interests. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402. "[T]he petitioner must prove the allegations [supporting grounds for termination] in the petition for termination by clear and convincing evidence." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768 (alteration in original; citation omitted). If grounds for termination are found by the fact finder then the parent is found "unfit" under WIS. STAT. § 48.424(4), and the case moves to the dispositional phase, at which the child's best interests are the "prevailing factor" to determine the disposition. *Julie A.B.*, 255 Wis. 2d 170, ¶¶26, 28; WIS. STAT. § 48.426(2).

¶15    Roy challenges the sufficiency of the evidence supporting both the continuing CHIPS and failure to assume parental responsibility grounds.

¶16    The State has the burden to prove every element of the continuing CHIPS and failure to assume parental responsibility grounds it alleged by clear and convincing evidence. *See St. Croix Cnty. DHHS v. Michael D.*, 2016 WI 35, ¶28, 368 Wis. 2d 170, 880 N.W.2d 107. "Our standard of review in a challenge to the sufficiency of the evidence is whether there is any credible evidence to sustain the verdict." *Id.*, ¶29. We review this question independently and "consider the evidence in the light most favorable to the verdict." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶¶17, 39, 333 Wis. 2d 273, 797 N.W.2d 854.

¶17    First, Roy argues that the evidence fails to support that DMCPS made a reasonable effort to provide him services.

¶18    In order to prove the continuing CHIPS ground, the State must prove that DMCPS "made a reasonable effort to provide the services ordered by the court."[4] WIS. STAT. § 48.415(2)(a)2.b. "'[R]easonable effort' means an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child, … the level of cooperation of the parent … and other relevant circumstances of the case." Sec. 48.415(2)(a)2.a.

¶19    Roy argues that DMCPS did not give him enough assistance while he was incarcerated. In support of this argument, he points to his own testimony about how he was making some progress prior to his incarceration to argue that it

---

[4] There are other requirements to establish continuing CHIPS under WIS. STAT. § 48.415(2); however, Roy does not dispute that the State has proven these elements, so we do not discuss them. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

can be inferred that he must not have received sufficient help since he did not complete the conditions of return.

¶20 There is ample credible evidence in the record to support the jury's finding that DMCPS made a reasonable effort to provide Roy with the court ordered services. Both of Roy's former case managers and the former case supervisor explained that—prior to Roy's incarceration—he was provided with multiple referrals for parenting services and urine testing. Roy testified that he was given the opportunity to engage in some of the court ordered services. He also testified that his case workers would reach out to him and that he received referrals for services like supervised visitation.

¶21 Although Roy argues that his incarceration required DMCPS to do more to get him to participate in the court ordered services, Roy's unavailability to participate in certain services due to his incarceration was a relevant consideration regarding whether DMCPS made a reasonable effort. *See Sheboygan Cnty. DHHS v. Tanya M.B.*, 2010 WI 55, ¶81, 325 Wis. 2d 524, 785 N.W.2d 369. The current case manager testified that she was unable to make referrals for services due to Roy's incarceration, and would have if Roy had been released from custody. She explained how she had discussed individual therapy with Roy and that she was ready to make a referral; however, she was unable to do so because Roy had been incarcerated about six days after she took over the case. Furthermore, the current case manager still maintained contact with Roy while he was incarcerated to keep him updated and discuss his progress.

¶22 Additionally, the "level of cooperation of the parent" is taken into consideration when determining whether DMCPS made a reasonable effort. *See* WIS. STAT. § 48.415(2)(a)2.a. Testimony from Roy's first case manager and case

supervisor indicated that Roy only completed one urine test despite receiving multiple referrals and he failed to complete the parenting program referred by the case managers. Furthermore, the current case manager testified that after Roy told her that he was participating in some courses to better himself while incarcerated she had asked him to provide her with the certificates or the name of the social worker so she could coordinate with him or her; however, Roy never provided any of the requested information.

¶23 Although Roy maintains that DMCPS did not do as much as he believes it should have, there is credible evidence in the record that supports the jury's finding that DMCPS made a reasonable effort to provide him the services ordered by the circuit court.

¶24 Second, Roy argues that the evidence does not support that he lacked a substantial relationship with Kim because he expressed his love and concern for Kim, participated in this case, and worked on completing the conditions of return.

¶25 To establish that Roy failed to assume parental responsibility the State must prove that Roy did not have a "substantial parental relationship" with Kim. *See* WIS. STAT. § 48.415(6)(a). "'[S]ubstantial parental relationship' means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." Sec. 48.415(6)(b). The circuit court considers the totality of the circumstances, including "any support or care, or lack thereof" the parent provides; "reasons why a parent was not caring for or supporting [his or] her child[;] and exposure of the child to a hazardous living environment" to determine whether there is a substantial parental relationship. ***Tammy W-G.***, 333 Wis. 2d 273, ¶3.

¶26 Roy points to testimony that supports he made some progress towards developing a relationship with Kim; however, the credible evidence in the record supports the jury's finding that he did not have a substantial one with her. Roy testified that, although he provided Kim with items such as diapers "a couple times," he was not responsible for Kim's daily care and was not providing financial support. He did not become her legally adjudicated father; he participated in only a limited number of supervised visits with Kim; and had not had any contact with Kim after he was incarcerated, including through birthday cards or letters. Therefore, we conclude that there is credible evidence in the record to sustain the jury's verdict.

¶27 Finally, Roy argues that the circuit court erroneously exercised its discretion when it found that termination of Roy's parental rights was in Kim's best interests. Roy concedes that the circuit court considered the requisite statutory factors[5] and instead argues that how the court weighed the evidence and factors was erroneous. Specifically, Roy contends that the court did not give enough weight to Roy's testimony about his efforts to be involved in Kim's life and that the court placed too much weight on Roy's incarceration and the foster parents' willingness to allow Roy to have contact with Kim in the future.

¶28 "A circuit court's decision to terminate parental rights is discretionary." *State v. B.W.*, 2024 WI 28, ¶70, 412 Wis. 2d 364, 8 N.W.3d 22.

---

[5] To determine what disposition is in the best interests of the child, the circuit court must consider the following the factors: (a) "[t]he likelihood of the child's adoption after termination"; (b) the child's age and health; (c) whether the child has any substantial relationships with his or her family and "whether it would be harmful to the child to sever these relationships"; (d) the child's wishes; and (f) "[w]hether the child will be able to enter into a more stable and permanent family relationship as a result of the termination[.]" WIS. STAT. § 48.426(3).

"A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." *Id.* (citation omitted). "[I]t is not our function to review questions as to weight of testimony and credibility of witnesses. These are matters to be determined by the trier of fact and their determination will not be disturbed where more than one reasonable inference can be drawn from credible evidence." *Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980). Furthermore, "[i]n its discretion, the court may afford due weight to an adoptive parent's stated intent to continue visitation with family members, although we cannot mandate the relative weight to be placed on this factor." *State v. Margaret H.*, 2000 WI 42, ¶29, 234 Wis. 2d 606, 610 N.W.2d 475.

¶29 We will not reweigh the evidence in this case. *See Johnson*, 95 Wis. 2d at 151-52. Based on our review of the record, the circuit court relied on credible evidence and considered each factor without "hinging" its determination on any one factor such as the foster parent's "unenforceable promise" of allowing future contact between Roy and Kim. *See B.W.*, 412 Wis. 2d 364, ¶¶76-77. Therefore, we conclude that the circuit court did not erroneously exercise its discretion.

## CONCLUSION

¶30 We conclude that the jury's findings, that the State had proven the continuing CHIPS and failure to assume parental responsibility grounds, were supported by credible evidence. We also conclude that the circuit court did not erroneously exercise its discretion when it determined that the termination of Roy's parental rights was in Kim's best interest. Accordingly we affirm.

11

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.